Case 16-4, Max Gerboc v. Contextlogic Inc. Good morning. Good morning, Your Honors. May I please the Court? My name is Nicole Fiorelli, and along with my co-counsel, Patrick Perotti, we represent the accounts in this matter. May I please reserve five minutes for rebuttal? Yes, thank you. Thank you. Contextlogic has lied to its customers. It's lied about the prices of the goods that they're offering, and it's lied about the discounts that they're providing. They've made these lies so that customers will come to their site and make purchases from them so that they can profit off of this. These lies have no place in society, and in fact, they are specifically prohibited by Ohio's Consumer Sales Practices Act. The district court correctly recognized this in allowing the individual CSPA claim to proceed. The district court erred, however, in dismissing the class CSPA claim, the unjust enrichment, and the fraud claims on the basis that plaintiffs had no damages. This is wrong for two reasons. One, on the CSPA claim and the unjust enrichment claim, plaintiffs are entitled to restitution, which doesn't look at whether the plaintiff has damages. You initially brought a breach of contract claim, correct? We brought that originally, yes, Your Honor. And under Ohio law, if you have a contract, you can't bring in an unjust enrichment claim, correct? Correct, and we would dispute that there is, in fact, a contract here at this point. Both parties disagree as to whether there's a contract. Didn't you attach or have an image of the receipt and argue that that formed a contract? We did plead that in our complaint, yes, and on the briefing. And the complaint's a verified complaint in Ohio, correct? Yes, Your Honor, and then we abandoned that claim in briefing the motion to dismiss. So when there's a disputed, and furthermore, the defendant disputed that they ever provided a contract for the discount. So when there's a disputed claim as to the contract, you have to have a valid contract that actually covers that particular subject in order to bar the unjust enrichment claim. Further, even if you have a contract. Wait a minute. So let's talk about that. Okay. If you have a valid contract and it says, I buy these speakers for $27, right, you have a, that covers the claim. Our contention about the contract, Your Honor, is that they promised a discount. They offered him a percentage off discount, and that was a term of the contract. They promised him speakers for $27, right? And they also promised him a discount, and that's the part that we are disputing. Where did they promise him the discount in the receipt? Because I missed that. Not in the advertisements, Your Honor. In the advertisements, they said $300, scratched it out, $27. And you got the speakers for $27. We got the speakers for $27, but we did not get the percentage off. So going to your point about the contract. So every time Amazon represents a book and puts the suggested retail price and crosses it out and then lists another price, they're committing the same? No, Your Honor, because the problem here is that they are not explaining what the reference price is. So in isolation with just a higher number with a cross through, consumers can view that as, okay, this was previously offered on this site or previously offered by competitors at the $300 price. But that's not what happened here. So it's misleading in that regard. However, under the Ohio CSPA, if you define the reference price, if you say this is based on a suggested retail price or this is based on a competitor's price, that complies with the law. We would not be here today if, in fact, they had defined what their reference price was. Now, getting back to your point about the contract precluding the unjust enrichment claim, additionally, under Ohio law, if you have a case where there's bad faith, fraud, or other illegality, you can still bring an unjust enrichment claim even if there's a contract. In our brief, we say it's a quick color sand versus the Fairmont Minerals Limited, which is an Ohio court of appeals case. And throughout our complaint, we've alleged... In your brief, you dedicated about one to two sentences to the fraud claim, correct? Correct. The fraud claim we are pursuing on the same theory as the CSPA claim. The fact that, well, there's two arguments to the CSPA claim. One, we're arguing we're entitled to restitution under Matz or Dodge. Two, we are arguing that we, in fact, have actual damages. And it's that same theory... Correct, and you didn't cite that to us. Which case are you referring to, Your Honor? I don't know. The Patty versus Coach. Ice v. Hobby Lobby. Ice v. Hobby Lobby. The claims in that case were dismissed except for unjust enrichment. The court did allow that claim to go through. But it dismissed the OCS class claims. Correct. And then in Martin, the Ohio court of appeals dismissed your unjust enrichment claims. They dismissed the unjust enrichment claim, and we contend that decision is error because that opinion is looking at whether the plaintiffs had a loss. You were a lawyer in that case, correct? Correct. You cited it to us and distinguished it in your brief? We distinguished it in our brief when the defendant raised it, correct. We don't believe that Martin applies here because we believe it's incorrectly applying Ohio law. Ohio law under restitution looks to the defendant's gain, not the plaintiff's loss. The 8th District in Martin was focusing on what did the plaintiff lose? Did they get what they paid for? That's not the appropriate analysis under unjust enrichment law in Ohio. You look to the defendant's gain. Here we had a gain. The plaintiffs... I'm sorry, you're saying I just misunderstood you. Are you saying California law or Ohio law applies to the unjust enrichment claim? Ohio law applies. And you're saying the Ohio Court of Appeals got their own law wrong? Yes, exactly. Is there Ohio Supreme Court precedent? Yes, there is. It's, I think, Johnson v. Microsoft, which talks about the fact that restitution is based on the defendant's gain instead of the plaintiff's loss. And we believe that is the law. We believe the 8th District, as well as the District Court, incorrectly applied that law because the focus of unjust enrichment is on the defendant's gain. Do you have a benefit to the defendant? Yes. The plaintiff purchased products from them, and therefore the defendant profited off that purchase. They have a gain. Under Ohio law, you balance the equities to see whether or not it's unjust for the defendant to retain that benefit. Here we have a situation where the defendant lied. They were offering fictitious discounts to the plaintiff. The plaintiff is an innocent victim. They just made the purchase. So when you balance the equities, and those are the facts that we put in the complaint, when you balance the equities under Ohio law, it doesn't favor the defendant. So therefore, since we don't look at the plaintiff's loss and the balance of the equities favors the plaintiff, we believe it was error to dismiss the unjust enrichment claim on the basis that plaintiffs didn't suffer a loss. For that same reason, for the restitution reason, we believe the CSPA claim should also go through. 1345.09b says, and I'm quoting, that consumer may recover, quote, damages or other appropriate relief in a class action under Civil Rule 23. Now, the Ohio Court of Appeals has talked about what other appropriate relief means, and they've expressly held that it means restitution. Matzah Dodge Jeep Eagle versus the Ohio AG. They specifically define that. So we have a statute that defines, says, not only can you get actual damages in a class action, but you can also get other appropriate relief. We have an Ohio law on point which says other appropriate relief means restitution. But to get there, you have to show notice and then damages, right? You have to show, we have to show notice for a class action. That's correct. What is your notice here? The notice is. How was the defendant put on notice that this violated Ohio law? They were put on notice by the regulations, by the Ohio Administrative Code. They argue that that regulation is for brick-and-mortar stores and for people that are going to draw brick-and-mortar stores. What's wrong with that argument? Well, one is the district court recognizes there's no language in that provision at all talking about that it only applies to brick-and-mortar stores. And if you look at the actual definition of out-of-store advertising. Hasn't it been interpreted that way? Not to my knowledge, Your Honor. Not to my knowledge. I mean, the actual, the language of it says, any advertisement, message, or representation made by a supplier outside of its interior premises. Plaintiff Gerbach was never inside the interior premise. This is a website. It's the same thing as a TV ad or a radio message where you're in your home, you're at work, you're viewing it outside of the store. Do you have any case where this rag has been applied to an online store? I didn't come across that, no. To the contrary, I haven't come across a case that has held what the defendant is asking for. And the district court, we believe, properly found that there's nothing in the rag that indicates it applies solely to brick-and-mortar stores. So we believe that we do have notice here. It's sufficient to allow the class claims to proceed. So for unjust enrichment and the CSPA claim, we believe that restitution is appropriate. Now, we also believe that damages, in the event that the court doesn't agree with the restitution argument, we argue that there are, in fact, damages under fraud in the CSPA claim. So they cite, and tell me why they're wrong, they cite the Patty case for the proposition that the regulation has an express purpose to prevent a brick-and-mortar retailer. They cite Patty, which is an FSUP case. It's at page 26 of their brief. Sure. I'm not aware of the legislative history for that specifically, but I believe we need to look to the plain language of the regulation first. And the plain language of the regulation says outside of the interior premise, and we've satisfied that. So regardless, I don't think we even need to get to what the legislature intended because that's the plain language of the regulation. And I see I'm out of time, so unless your honors have any additional questions, I will get back up here on rebuttal. Thank you. Good morning, your honors. May it please the court, Jeffrey Jacobson for Defendant Context Logic. Your honors, the First Circuit provided an excellent template for deciding this case last week when they decided both the Chalice against Nordstrom's and Mulder against Cole's cases. There, they held that in Massachusetts, just like in Ohio, because you need actual damages in order to bring a consumer fraud claim, the consumer fraud claim was out. And in Massachusetts, just like in Ohio, you can't have an unjust enrichment claim. Give me those cases again. I'm sorry. Sorry. Yes, your honor. We provided them to the court in a supplemental filing last week. They were just decided. The first one is Chalice, S-H-A-U-L-I-S, against Nordstrom. It's number 15-2354. It was decided by the First Circuit on July 26th. On the same day, they decided Mulder, M-U-L-D-E-R, against Cole's department stores. That was number 16-1238. We provided the court with the slip-up. We didn't have an online site yet. Okay. But they should be available now. I believe so, your honor. And so, again, the First Circuit dismissed the unjust enrichment claims in those cases because an actual contract governed the sale. Here, there are two reasons. They abandoned their contract claim, and even you in your answer, I thought, disputed that a contract existed. We did not, your honor, and I disagree with Ms. Fiorelli's presentation on that point. We agree that there was a contract to sell speakers for $27, and we sold a speaker for $27. They're contending that there was a separate contract for a discount, but there is no separate contract. The contract, as Judge Nugent recognized, was to provide speakers for $27, which we did. Your company never sold speakers for $300, these speakers for $300. Your honor, that was actually, if I may, that was the basis on which I was going to say that this case is one step removed from the First Circuit cases. We are not a seller. We're a marketplace. We link buyers and sellers, and so here there was a seller that sold these speakers to Mr. Gerbach for $27. Your honor is asking the question that I'm sure is on everybody's mind, which is did that seller ever sell that speaker for $300, and the answer I am forced to acknowledge is I don't know. That's not our price. We're not arguing that you're the agent of the seller. Your honor, I'm not trying to get out of the case on that basis. You are the seller. We're not trying to get out of the case on that basis. What we're pointing out is, and Ms. Fiorelli acknowledged this in her briefing, we are the term, the $300 piece of information came from the seller. The seller listed his item for sale. And on that, so the statement came from the seller, and that's why I'm saying I don't know what was going on with that statement. But the contract was to sell the speaker for $27, and the seller did. And by the way, by the time Mr. Gerbach brought his complaint, the price of the same speaker had changed. It was now $28 without free shipping. So at the time, the contract was to provide him with the speaker for $27 and free shipping, which they did. So first, there were two reasons. I just want to get back to those First Circuit decisions, because they are exactly this case, except for two things. The first is, we're an online marketplace, not a brick-and-mortar store. And the other reason is that in Massachusetts, those plaintiffs were shut out completely. In Ohio, the legislature balanced what they wanted done in an individual action versus a class action. Under your company's procedures, do you have the right to approve the advertisement of the seller? I'm sure we do, Your Honor. I'm sure we would have the ability to delete an item if we did not believe it appropriate. Again, I'm not trying to get out of the case on the basis that it was not us, it was not context logic that put that $300 there. I'm simply saying that here he's complaining about this speaker. Ms. Fiorelli is attacking context logic generally. We have hundreds of thousands of items for sale, and you would need to perform this exercise for each item if that was where the case went. But so here, if Mr. Gerbach wanted to proceed with his individual claim, which Judge Nugent allowed him to do, the Ohio CSPA allows him to sue for non-economic damages in an individual action. In fact, it has a pretty significant $5,000 hammer in an individual action. But in a class action, the Ohio Supreme Court said very clearly in the Felix v. Ganley case, you have to have actual damages. Ms. Fiorelli mentioned the Motts or Dodge case and says that, well, in the Ohio CSPA you can get restitution. Motts or Dodge, the other side of the V in that case was the Ohio Attorney General.  The Ohio Attorney General doesn't have to meet the standard for a class action that Mr. Gerbach does. But Mr. Gerbach bringing a class action, as the Ohio Supreme Court said very clearly in the Felix case, has to have actual damages, and he doesn't. So from my perspective, we're basically the First Circuit case. We've got the same problem with no actual damages. We provided the speaker for $27. What about their argument, because the Patty case I was looking at, it doesn't say that it's limited to brick and mortar. It says out-of-store advertisement or something to that effect. Your Honor, you're right. That's what the regulation says. I think Ms. Fiorelli and I agree that there is no case applying that regulation to an Internet retailer. This is the first case in Ohio that I'm aware of brought solely against an Internet retailer. The claims that have been brought and have been allowed to proceed against brick and mortar retailers, they've made the point that these are advertisements placed separately from the store, advertising a discount unattached to a particular price, but then you drive to the store and there's no sale. So here, the only representations are inside the same page where Mr. Gerbach visited to buy the item. So there's no out-of-anything. It's just right there on the same page. So if a store existed, Dick's Sporting Goods, and they sold something on your site, and they made a representation, that would be an out-of-store advertisement as to Dick's, and then even if they sold it online, Dick's sells both online and in the store. So why isn't that an out-of-store advertisement? Well, it's an interesting question, Your Honor. If Dick's Sporting Goods sells something on our site and you can buy it on our site for the price they're advertising, then it's not an out-of-store advertisement, come to the store and get something. It's a statement right there on the website, come right here, click the button, and you buy the item. It depends, as she said, plain language, it depends how you interpret out-of-store. It is an out-of-store. It's not an advertisement in the store. It's an out-of-store advertisement. It's on a website. I don't think it's an advertisement at all, Your Honor. I think that's basically where the word falls, where the regulation falls. I think that the issue here is we are not advertising something, come visit me and you will receive something. It's just, it's the webpage where you can buy the item. So I don't view it as an advertisement in or out of store. I just view it as click here, buy the speakers for $27. And so what you're saying is the purpose of that reg is to prevent people from driving to a store where they believe they're promised something and they can't get what they want. Which is exactly what the Henry against Michaels case that Ms. Fiorelli really relies heavily upon did, is that there, Michaels said 40% off sale, except there was no sale. It was the same price you get every day at Michaels. So that was, that's the main case that they rely on for this, and that was exactly the situation that Your Honor alluded to. But that's what she's arguing here is this is a 90% off sale, and yet it's the same price you get every day for this. Well, Your Honor, the representation is what the representation is. The question is did Mr. Gerbach suffer any damages as a result of the statement, and can he therefore bring a class action under Ohio law? And the answer is that because he bought the speakers for $27 doesn't contend they're worth less than $27 and doesn't contend we promised him a price lower than $27, he has no damages. That's why the class claims go out. That's why the First Circuit dismissed all of the claims in the Chalice and Mulder cases. I have nothing further, if the Court has no further questions. I want to start first, Your Honors, about talking about the First Circuit decisions. First of all, the First Circuit decisions, I will note, have not been followed by the Ninth Circuit. They took a different approach in Hinojos v. Coles. So the First Circuit isn't like the Holy Grail in this area of the law. More importantly, however... The Ohio law, the Ohio statute, is it closer to the California law or closer to Massachusetts? I don't know, Your Honor, offhand. I haven't compared the three laws. But what I will say is this, is that Massachusetts law is not Ohio law. And in Ohio, we have... The argument is that they're substantially similar. I haven't spent a lot of time on that, but that was their argument, and that the analysis ought to apply because the laws are substantially similar. And they argue that California law is substantially different. Right. What we have here, though, is an Ohio case directly on point, and that's Crow v. Fred Martin-Motor, which specifically held that the failure to provide a discount constitutes damages under Ohio's Consumer Sales Practices Act. The district court did not address this case. In fact, none of the cases that we've lost on have really distinguished this case at all. And there's no reason why it shouldn't apply. The court in that case specifically looked at what do actual damages mean under the CSPA. And it's a broad definition. Pecuniary losses of any type, direct, incidental, or consequential. Looking at that language, the court then said, the failure to provide a promised discount constitutes damages. That's Ohio case law on point. So regardless of what the First Circuit said about Massachusetts law, we have an Ohio case which says, yes, in this situation, there are damages. The other reason why we have damages here is that the FTC has weighed in on this. This isn't some trivial thing to not provide this discount. And per Ohio Revised Code 1345.02c, in construing this ---- I mean, you say that we have damages. That's the conclusory statement. Tell me, what are the damages? The damages can be looked at from two ---- What are your client's damages? The damages here are either, A, the percentage off discount that he was not provided. Well, that seems kind of ---- I mean, that's not concrete damages. You're saying ---- Well, under Crowe, it was. She was promised $3,000 off. She wasn't given $3,000 off. We were promised 91% off the purchase price. We weren't given 91% off the purchase price because the higher reference price was completely fictitious. As we pled in our complaint, it wasn't used by Unwish.com. It wasn't used by competitors. So we believe that it is, in fact, concrete. Additionally, as the FTC has said, if the former price being advertised is not bona fide but fictitious, for example, where an artificial inflated price was established for the purpose of enabling the subsequent offer of a large production, the bargain being advertised is a false one. The purchaser is not receiving the unusual value he expects. They're not receiving the value. We were looking at an item that was marked with a much higher price. He didn't receive an item that ever had been sold at that much higher price. Instead, he got this $27 item. He was not receiving the value he expected. You're saying that he got too good of a deal and, therefore, I have out-of-pocket loss because I had too good of a deal. I don't quite follow that. Your Honor, we're saying that he didn't get a good deal. He thought he was getting a good deal, but he didn't. Yeah, we're asking for a big discount. He has no out-of-pocket loss. He does have loss for what he was promised that he did not receive. Wait, what out-of-pocket loss did he have? That's the question. He didn't pay extra, so to speak, but he didn't get what he was promised, and that's what we're contending the damages are. He was promised speakers for $27, right? He was promised a discount of 91%. He was promised speakers for $27. The list price of the speakers, the selling price of the speakers was $27. Yes, he paid $27. There's no discount in the page. There's $300, and there's a line. On the ad to click on it, Your Honor, this is the first thing the consumers see. There's a little picture, and in the corner, there's percentages off, minus 91, minus 70, whatever it is. Then you click on it, and then it tells you what that percentage off discount is by the higher reference price and then the selling price. Under that theory, under Crow, we'd ask this Court to consider Crow and that it applies to this case as well. Additionally, to talk about getting back to these out-of-store advertisements and the notice component. Crow advertised an interest rate to buy cars that was only available if you had a certain credit score, right? That was part of the complaint in that case, yes. On cross-appeal, the defendant had argued that the plaintiff was not entitled to treble damages, I think, with respect to the discount that wasn't provided. That's where the Court looked at what actual damages were and analyzed it. So you're saying that that's not – you agree that that wouldn't provide support for your argument. You're talking about later in the opinion, the $3,000 thing? Yes, Your Honor. Yes, Your Honor. I see my time is up, so unless Your Honors have any other questions, thank you. All right, thank you. Thank you. The case is submitted. When the table is superior, you may call the next case.